**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:

**WILLIAM CAISE**                                                   **CASE NO. 05-50358**
**MINIKA CAISE**                                                      **CHAPTER 13**

**DEBTORS**

**MEMORANDUM OPINION**

This matter comes before the Court on the motion of the Chapter 13 Trustee (Doc. # 39) to examine the transactions of the Debtors ("the Caises") with their former attorney, Ginger Knight ("Ms. Knight"). The Court has received and reviewed the Caises' verified statement detailing the transactions they had with Ms. Knight, as well as affidavits of Ms. Knight and her employee paralegal, Tasha Prater ("Ms. Prater"). Finally, the Court provided opportunity for the Caises and Ms. Knight to submit evidence and /or to make oral statements to supplement the contents of their written statements at a hearing held on December 1, 2005.

Mr. and Mrs. Caise first met with Ms. Prater at Ms. Knight's office in September of 2004 to discuss, and begin, the bankruptcy process. At that time, the Caises provided information about their finances and some documentation necessary for the filing of a bankruptcy petition. There is no conflict among the statements of the Caises, Ms. Knight or Ms. Prater that it was understood from early on that the Caises desired to

file a Chapter 7. All agree that, initially, the Caises were advised that they could file a Chapter 7 and that, prior to filing, the Caises paid fees and court costs appropriate for filing a Chapter 7 petition. Upon payment of the costs related to filing and provision of the necessary documents, the Caises were ready to sign and file their bankruptcy petition in February, 2005. At both the September, 2004 and February, 2005 appointments, the Caises met only with Ms. Prater and not with Ms. Knight, their attorney.

The date the Chapter 7 petition was signed, the Caises were sent by Ms. Knight's office staff to purchase a vehicle, having surrendered the keys to a truck that they did not intend to keep post-bankruptcy. While at the dealership, Mrs. Caise telephoned Ms. Knight's office in order to have some papers necessary to the negotiations faxed to the sales person. Shortly thereafter, apparently upon review of the Caise's financial information, Ms. Knight telephoned Mrs. Caise to inform her that in fact they were not in a position to file a Chapter 7 and that, either because of the level of the Caise's income or home equity, the Caises would need to file a Chapter 13 petition to protect their assets. The parties' statements vary on this particular point, which is of no significant consequence, but they agree that this was in fact the first time either of the Debtors had spoken directly with their legal counsel, Ms. Knight, regarding their bankruptcy case.

The Caises returned to Ms. Knight's office at which time, despite their frustration with being improperly advised and their desire to file a Chapter 7, they signed a Chapter 13 petition which was filed on their behalf on February 9, 2005. The Chapter 13 plan underwent at least two amendments and the confirmation hearing was postponed

several times as the Caises had difficulty making the variously proposed payments under the plans. Despite efforts to pay more money into the plan or to adjust payment amounts, the Caises were ultimately unable to comply with the proposed plans and the Chapter 13 Trustee moved to dismiss the Chapter 13 proceeding in September, 2005. The chapter 13 case was dismissed by Court order dated September 15, 2005.

On September 26, 2005, the Chapter 13 trustee sought an order of the Court permitting her to issue a refund to the Caises of all payments made under the plan. The trustee stated that she was then holding the sum of $3,155.24, from which Ms. Knight was claiming an additional $695.00 in attorney's fees. Ordinarily, the Chapter 13 trustee will issue a check payable to the debtors and send it to the debtors' attorney so the attorney can collect any fees which may be owed. In this case, however, the Caises disputed Ms. Knight's entitlement to the additional fee and the trustee sought authorization to send a refund check in the amount of $2,460.24 ($3,155.24 - $695.00) directly to the Caises rather than through Ms. Knight. The remaining sum of $695.00 is being held by the trustee pending resolution of this motion examining the transactions between the Caises and Ms. Knight.

This matter was set for an evidentiary hearing on December 1, 2005, prior to which the Caises (Doc. #39) and Ms. Knight and Ms. Prater (Doc.# 44, #45) each submitted verified written statements regarding their respective positions. Neither the Caises nor Ms. Knight opted to submit additional testimony at the hearing or to cross-examine the other regarding their statements.

At the outset, the Court acknowledges the statement of the Chapter 13 trustee that there are any number of attorneys other than Ms. Knight whom the trustee would

prefer to see explaining their client transactions to the Court. The Court likewise agrees that ordinarily Ms. Knight is a very capable and well-regarded professional. Further, the Court understands that utilization of non-professional legal assistants and paralegals enables attorneys to provide important services to their clients in a more efficient, and therefore more affordable, manner. That being said, however, the trustee's representation that this matter carried too many red flags for her to ignore requires the court to examine the transactions between Ms. Knight and these particular debtors to ensure that bankruptcy practice standards are maintained even before the debtors see the inside of a bankruptcy courtroom.

     Ms. Knight stated that as a matter of expediency, some matters are handled on a routine basis by a paralegal in her office. There was no evidence offered as to whether the Caises' experience is typical for Ms. Knight's office, but in their situation, the paralegal Tasha Prater was responsible for the initial client meeting, presentation of any necessary documents to retain Ms. Knight, discussion of the type of bankruptcy that would be filed on their behalf and the application of various exemptions available to them under law, and finally review and execution of the bankruptcy petition and related documents. Ms. Knight emphasized that she alone is responsible for establishing the parameters that are applied to determine whether a client should file a Chapter 7 or 13 bankruptcy case. Ms. Knight further averred that no one from her office but she finalizes or files a bankruptcy petition. While it is apparent that Ms. Knight eventually became personally involved with this bankruptcy case before it was actually filed, the confusion and inconvenience suffered by the Caises make it clear to the Court that in this case Ms. Knight failed to adequately supervise her paralegal.

While Federal Courts have inherent power to regulate practice in cases before them, Bankruptcy Courts look to state law to determine what acts are appropriate for non-professionals and what may constitute the unauthorized practice of law. *In re Moffett*, 263 B.R. 805, 813 (Bankr.W.D.Ky. 2001), *In re Lyvers,* 179 B.R. 837, 840 (Bankr.W.D.Ky. 1995). Kentucky Supreme Court Rule 3.020 defines the practice of law in this state:

> The practice of law is any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services....

The Kentucky Supreme Court has also issued guidelines regarding the employment and duties of paralegals:

> a paralegal is a person under the supervision and direction of a licensed lawyer, who may apply knowledge of the law and legal procedures in rendering direct assistance to lawyers engaged in legal research; design, develop or plan modifications or new procedures, techniques, services, processes or applications; prepare or interpret legal documents and write detailed procedures for practicing in certain fields of law; select, compile and use technical information from such references as digests, encyclopedias or practice manuals; and analyze and follow procedural problems that involve independent decisions.

SCR 3.700, *Preliminary Statement.* The fundamental qualification of the performance of these duties is that the paralegal must work under the supervision and direction of a licensed lawyer. *Turner v. Kentucky Bar Association*, 980 S.W.2d 560 (Ky. 1998).

Because there are no Kentucky cases specifying what constitutes the unauthorized practice of law in the context of a bankruptcy case, it is instructive to review how other bankruptcy courts, including the Bankruptcy Court for the Western District of Kentucky, have examined the issue. This Court agrees that the following

activities within a bankruptcy case fall within the practice of law: (1) Determining when to file bankruptcy cases, *United States Trustee v. Tank (In re Stacy),* 193 B.R. 31, 39 (Bankr.D.Or.1996); (2) Deciding whether to file a Chapter 7 or a Chapter 13, *In re Pinkins,* 213 B.R. 818 (Bankr.E.D.Mich. 1997); (3) Advising debtors about exemptions or which exemptions apply to their property, *Moffett,* 263 BR at 814; *In re Guttierez,* 248 B.R. 287 (Bankr.W.D.Tex. 2000); (4) Using a bankruptcy questionnaire to prepare a petition, *Moffett,* 263 B.R. at 815; *Hastings v. United States Trustee (In re Agyekum),* 225 B.R. 695, 702 (9th Cir. BAP 1998); (5) Defining and explaining concepts of bankruptcy and other legal terms of art, *Pinkins,* 213 B.R. at 821.

Because the Caises' only contact with Ms. Knight's office was through Ms. Prater from their initial appointment through the execution of the ultimately rejected Chapter 7 petition, it must be concluded that such services as those enumerated above would have been provided by, or at best filtered through, non-professionals. Whether the hasty changeover to and/or the ultimately unsuccessful Chapter 13 could have been avoided through skillful supervision by Ms. Knight or whether her earlier involvement with the Caises would have prevented the problems that occurred in this case is not known. Nevertheless, the Court agrees with the observation of the Supreme Court of Ohio in *Columbus Bar Association v. Flanagan,* 674 N.E.2d 681, 683 (Ohio 1997) that "[e]ven in a high-volume practice where an assistant might prepare some forms, an attorney...would at least interview and counsel [her] clients before a course of action was chosen and the documents drafted."

While Ms. Knight may in fact set the parameters for determining whether to file a

case under Chapter 7 or Chapter 13, she must also, at a minimum, personally communicate those parameters and the application of them to her clients' case, before the petition is prepared and executed.  Communication of legal advice regarding what exemptions exist and how they are to be applied to property of the debtor cannot be made by, or delegated to, a non-lawyer.  Indeed, the Court finds that a lawyer cannot adequately represent a client consistent with the Kentucky Supreme Court Rules governing professional conduct and appropriate bankruptcy practice standards without meeting with the client before the client's bankruptcy petition is prepared and readied for filing.

For the reasons stated herein, the Court finds it appropriate that the $695.00 being held by the Trustee from previous plan payments made by the Caises in this matter should be refunded to the Caises in its entirety.  Further, the Court finds that Ms. Knight should likewise refund to the Caises all sums which they paid to her for attorneys fees, costs and any other expenses relating to the herein Chapter 13 proceeding.  A separate Order implementing the terms of this Memorandum Opinion will be entered herewith.

Copies to:

Ginger C. Knight, Esq.
William & Minika Caise, Debtors
Beverly M. Burdern, Esq.
John Stonitsch, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*William S. Howard*
**Bankruptcy Judge**
**Dated: Monday, February 06, 2006**
**(jms)**